This was an action of detinue brought by the appellant against the appellee in the District Court of Fredericksburg for the following slaves, to wit, Reuben, Mordicai, Disee, Nan, Gabriel, Dawson, Ben, Milly, Jane, and Jerry. The declaration was in the common form; plea non detinet, and issue.— The Jury, who were sworn to try the issue, found a special verdict; that the testator of the plaintiff, on the 24th day of March, 1788, being possessed of the slaves in the declaration mentioned as of his own proper goods and chattels, having previously intermarried with Susanna Brock, the daughter of the defendant, executed a paper-writing purporting to be a deed ; (which they find in haec verba;) whereby he conveyed to John Brock *a tract of land in Spotsylvania, and the following slaves, to wit, Jerry, Mordicai, Den, Pallis, Jesse, Alice, Tom, Cate, Hannah, Nan, Priscilla, Gabriel, and Dawson, in trust, for the grantor and his wife for life, and for the life of the survivor ; and, after their deaths, and the death of the survivor, for the use of the children of the marriage; or, if there was no child or children, then the lands and slaves which originally belonged to the said Benjamin, (except Mor-dicai and Alice,) to be held in trust for his heirs, or for such person as he should appoint and direct; and that Nan, Priscilla, Gabriel, Dawson, Mordicai, and Alice, with their increase, should be held in trust for the use of the heirs of the said Susanna his wife, or to be disposed of as she should appoint and direct; — which paper-writing they find to have been duly recorded :
That John Brock, the trustee, died before the institution of this suit, and that Susanna (the wife of the said Benjamin Robinson, the testator of the plaintiff) died in the lifetime of her said husband without any child ; that Benjamin Robinson, (the testator,) after the death of his said wife, to wit, on the 19th of June, 1794, being still possessed of the said slaves, made and executed a paper-writing, (which they find in haec verba,) in which there is a recital that the said Benjamin Robinson had executed a deed of trust, &c. by virtue of which deed the following slaves, to wit, Nan, Priscilla, Gabriel, Dawson, Mor-dicai, and Alice, with their future increase, after the death of the said Benjamin and his wife the said Susanna, without issue, (the same not being disposed of by her,) would descend to her father the said Joseph Brock or his heirs ; and that she had died without issue; thereupon, in consideration that the said Joseph Brock should release and give up all his right to Alice and to three of her children born after the deed made, and to some household furniture, and also in consideration of the sum of five shillings, the said Benjamin released and relinquished to the said Joseph his the said Benjamin’s interest in Mordicai, Nan, Priscilla, Gabriel, Dawson, Ben, and Milly, which paper-writing is found in the said verdict to have been duly recorded ; (though the certificate of the clerk states it to have been recorded on proof by one witness ;) and that the slaves in the said paper-writing are a part of the slaves in the declaration mentioned.
They find that the said Susanna made no appointment or other disposition of the said slaves in the first writing mentioned. They find that the slaves in the declaration ^mentioned are the slaves námed in the indenture aforesaid, dated the 24th March, 1788, or the increase of the females ; and that the said Benjamin Robinson departed this life, prior to the 1st of January, 1796, possessed of the said slaves ; without any child ; having duly made his testament and last will; dated the 11th of August, 178S ; (which they find in hasc verba;) whereby, he devised some property to his sister, and the following slaves to his brother Charles Carter Robinson, (the plaintiff,) to wit. Reuben, Mordicai, Den, Disee and her increase ; and every thing else in his possession after paying his debts; that administration with the said will annexed was granted to the plaintiff by the proper Court; and that the defendant was in possession of the slaves in the declaration mentioned at the time of bringing the suit. — They also find that the said Benjamin Robinson, on the 3d of February, 1792, executed a writing purporting to be a deed ; (which they find in hsec verba ;) in which it is stated that he (for the consideration of 421. 8s. lid. theretofore advanced, and of some securityships entered into by Joseph B.rock for him) bargained and sold to the said Joseph Brock four negroes, named Reuben, Disee, Hannah and Johnston, with their future increase, which deed they find had been duly recorded ; and that Disee and Reuben therein named are two of the slaves in the declaration mentioned ; that the defendant, previous to the marriage of the said Benjamin and Susanna, was possessed of the slaves Nan, Priscilla, Gabriel, and Dawson, and, between the 4th of December, 1787, and the 24th of March, 1788 ; and gave them to the said Benjamin Robinson as a part of his daughter’s fortune. — If upon the whole matter, &c. they find for the plaintiff all the slaves ; or, if the law be for him, only as to Reuben, Disee, Jane, and Jerry ; then, they find them for him with damages — But, if the law be for the defendant, then they find for him. — The District Court gave judgment for the defendant; and from that judgment the plaintiff appealed to this Court.
Williams, for the appellant, contended, 1st. That upon the death of Mrs. Robinson, without a child, all the slaves named in the deed of 1788, passed to the testator of the appellant. The deed provides that the trustee was to hold them for the use of Robinson and his wife, during their lives, and for the life of the survivor ; and if she die without a child, then for the use of her heirs, or such *105 person as she should appoint. She made no appointment, *and her husband having survived her, he is her heir, as to personal estate ; that is, he is the •distributee. So, if he die, it shall go to his executor, (a)
It is true that the husband surviving the wife, is not entitled to a chose in action, belonging to the wife, unless it is reduced into possession during the coverture. He •can only be entitled as her administrator ; but still he is not compellable, under our act of Assembly to make distribution to any body. In Sneed and Drummond, (b) and Dade v. Alexander,(c) the Court seem to have sanctioned this doctrine. In one of those cases the husband had not taken administration on the effects of his wife, but nevertheless the Court sustained his claim. Even in the case of choses in action, the representatives of the husband are entitled.
The term heir as applying to personal •estate must necessarily mean the distributee. He considered the case of Wallace and wife v. Taliaferro and wife,(d) as decisive of the question, that slaves are personal estate, and, as it respects the estate of the wife, subject to the same rules as choses in action.
JUDGE TUCKER —
Does not the trust estate create a difference ? — Did not the trustee hold for the benefit of the cestuique trust ?
Williams. The trustee was to hold for the use of the heir of Mrs. Robinson, in the event of her dying without issue ; and if this argument be correct, the estate must go to the husband, or his representatives. The deed •does not say to the father, brother, &e. but to the heir, (e)
He contended, 2dly. That nothing passed by the deeds of 1792 and 1794. The conveyance of 1794 was upon condition that the father of Mrs. Robinson should release to the testator of the appellant certain slaves. Until that was done, nothing passed particularly, as there was no delivery, and the consideration was merely nominal, being the sum of five shillings.(f) The deed of 1792, stating the consideration to have been as an indemnity for some securityships entered into by Brock for Robinson, the testator of the appellant, it cannot be presumed that Robinson meant to part with his estate farther than was necessary to effect that object. Unless it be proved that those debts were paid by Brock, he acquired no absolute title to the slaves under the deed. The Jury expressly find that Robinson continued in possession of ^them till his death and Brock’s getting possession a fter the death of Robinson cannot better his title, (g)
3dly. That Robinson had no power to dispose of the slaves, but under such an appointment as was contemplated by the indenture of 1788 ; which neither of the papers (found by the Jury) are.
But if all the other points should be against him, he insisted that there must be a judgment for Jane and Jerry, because it does not appear that they were ever parted with by the testator of the appellant. They are not contained in any of the deeds. The Jury find that he was possessed of them, and it does not appear from any finding in the cause, that he ever disposed of them.
With respect to the difficulty (suggested by one of the Judges) of severing the damages as to two of the negroes ; (in the event that the Court should be of opinion the appellant was entitled to them ;) he supposed it might easily be obviated by awarding a writ of inquiry. This might have been done, even if the Jury had found no damages. The Jury having submitted the whole case, it is competent to the Court to decide on a particular part of it. The Court may affirm the right as to the two negroes, and award a writ of inquiry as to the damages ; on the same principle that they may award a writ of inquiry, if the Jury in an action of detinue, omit price or value ; — which, in that case, is expressly authorised by law.
Botts, for the appellee. The deed of 1788 having vested the legal estate in the slaves, in John Brock and his heirs, neither the appellant nor his testator could recover them in an action at law. In the action for money had and received, although, the plaintiff recovers on the ground that he is entitled in conscience, yet he must have a legal right. So, in ejectment, where there is an outstanding term in cestuique trust, the Court will instruct the Jury to presume a surrender. In no other case can an equitable title be asserted in a Court of Daw. In this case, the trust was not executed, but devolved upon the trustee and his heirs.
The provisions of this deed extend beyond the life of the wife ; and it appears to have been the obvious intention of the parties that the property should be distributed among her relations. The deed of 1794 declares this to be the true exposition of the deed of 1788 ; and, being an instrument of as high dignity, might even have been admitted to explain it, if it were ambiguous. Suppose, instead of a separate deed, an endorsement had been made on the *original, it certainly would have been considered as valid as a part of the deed itself.
The husband, as such, never had possession — that was in the trustee. In Wallace v. Taliaferro it was decided that the husband held in his fiduciary, no this individual character. If then, the testator of the appellant was neither possessed in right of his wife, nor took administration on her estate, he cannot recover.
The deed of 1792 conveyed all the right of Robinson, in the slaves therein named. It is objected, however, that it was given merely as an indemnification, for some securi-tyships and an advance of money. The deed is absolute and explicit; and if not sufficient in itself, no argument cam make it so. It is also objected, that the consideration in the deed of 1794 is insufficient to pass any estate. II the deed could be impeached, at all, it must be in a Court of Equity ; not at law.
With respect to the slaves, Jane and Jerry, the Jury find that they are the increase of the females named in the indenture of 1788 ; and in the concluding part of the special verdict, *106 they are placed in the same class with two others specially named in that indenture.
But if the appellant could succeed as to Jane and Jerry, no judgment, severing the 1001. damages, could be given. It is argued that a writ of inquiry, as to them, may'be awarded ; — and this is inferred from the act of Assembly, which authorizes it in a particular case. It is admitted that, without the aid of the statute, it cannot be done. On what principle can the Court extendthe provisions of a law further than the legislature has done ?
Williams, in reply. The trustee, in this case, was a mere nominal person. On the death of the husband and wife the trust was executed. During the life of the husband, he having survived his wife, the trustee held for him, and, after his death, the estate devolved upon his representative.
The deed of 1794 does not change the provisions of that of 1788. The grantor, in the former, speaks of the operation of the latter, merely as a legal deduction ; in which he was mistaken.
There is no weight in the objection that the husband did not administer on the estate of his wife; for, being in possession, and not bound to make distribution, it would ‘have been a nugatory act to take administration.
*It is said that the deed of 1792 conveys absolutely. But Robinson having remained constantly in possession from 1780; and it not having been found that Brock paid any part of the consideration for which the deed of 1792 was exe-ecuted; it can only be considered as a mortgage.
As to Jane and Jerry, there can be no doubt of the right of the appellant. — If he was entitled to recover them, the District Court erred, in giving judgment for the defendant: and, if this Court do not admit my exposition of the statute, and award a writ of inquiry, they must direct a venire facias de novo.
Curia advisare vult.
Thursday, June 18. The Judges delivered their opinions.
JUDGE TUCKER.
The special verdict found in this cause presents the following case:
Benjamin Robinson, (being then probably single,) on the 11th day of August, 1785, made his last will, whereby he devised some property to his sister, and the rest of his estate to his brother Charles Carter Robinson ; (the plaintiff below ;) he died in January, 1796. Having, between the time of making his will and his death, that is, in December, 1787, intermarried with Susanna, the daughter of Joseph Brock on whom he made a settlement, before marriage ; — but, some of the negroes intended to be comprised in it, being omitted ; he, on the 24th of March, 1788, executed an indenture of trust (in which his wife Susanna is named as a party, but does not appear to have executed it) to John Brock ; for the purpose of complying with his marriage-contract, and that a competent jointure might be settled on his wife; (in lieu of dower, and in consideration of the fortune received by her;) whereby he conveyed to the trustee and his heirs a tract of land, and sundry negroes (including four received from the defendant with his wife) to the use of himself and his wife, and the survivor of them, for life, without impeachment of waste ; and thereafter, to the use of the child or children of the marriage; and if no child, then the land and slaves which originally belonged to the husband (except Mordicai and Alice) to be held in trust for his heirs, or to be disposed of as he should appoint and direct; and that Nan, Priscilla, Gabriel, Dawson, Mordicai, and Alice, with their future increase, should be held forever in trust, for the use of the heirs of the wife, or to be disposed of as she shall appoint and direct. She died in the life-time of *her husband ; without any child, and without making any appointment. The Jury find that the slaves in the declaration mentioned “ are the slaves named in that indenture, or the increase of the females therein also named;” and that Benjamin Robinson died in 1796, possessed of them.
They find that on the 3d of February, 1792, Benjamin Robinson executed an instrument under his hand and seal, whereby, in consideration of 421. 8s. lib. by Joseph Brock (the defendant I presume) before paid and advanced for him, and of certain pecuniary engagements for him, he granted, bargained, and sold to him four negroes, Reuben, Disee, and two others, with their future increase, with a clause of warranty. — This instrument was executed in the presence of one witness, only, by whom it was proved, and admitted to record, in April, 1792. Reuben and Disee are mentioned in the declaration.
They find that Benjamin Robinson, after the death of his wife, viz. on the 19th of June, 1794, being still possessed of the slaves, executed a writing under his hand and seal, in the presence of two witnesses, one of whom only proved the same, upon which it was admitted to record ; wherein it is recited that he executed the first mentioned deed of trust, and that, in the said deed, among other things, the following negroes, Nan, Priscilla, Gabriel, Dawson, Mordicai, and Alice, with their future increase, were to be held in trust, for the use and benefit of himself, and his wife, during their lives, or the survivor of them, and after their deaths, without issue, on being disposed of by her, (she being since dead,) they will descend to her father Joseph Brock, (the defendant,) and that on consideration that the- said Joseph shall release and give up all his right to Alice, and her three children born after the deed was made, and for the further consideration of the said Joseph giving up other .things of the value of 301. and of five shillings in hand paid, the said Benjamin doth thereby release and relinquish to the said Joseph all his right, title, and interest in Mordicai, Nan, Priscilla, Dawson, Ben, and Milly.
They find that between the 4th of December, 1787, and the 24th of March, 1788, Joseph Brock, the defendant, was possessed of the slaves, Nan, Priscilla, Gabriel, and Dawson, as of his own property, and gave them to Benjamin Robinson as part of his daughter’s fortune.
If upon the whole matter the Court shall *107 be of opinion for the plaintiff, they find for him all the slaves, &c. and damages. But if the Court shall be of opinion that the '“plaintiff is entitled only to Reuben, ¿isee, Jane, and Jerry, they find them for the plaintiff, or their respective values, &c. and 1001. damages. The plaintiff is administrator of B. Robinson with the will annexed. The Court gave judgment in favour of the defendant, and the plaintiff appealed to this Court.
The counsel for the appellant contended :
1. That, upon the death of Mrs. Robinson without a child, all the slaves named in the deed of March, 1788, vested in B. Robinson, the husband — as well those which were to go to the heirs of the wife, as the others, he being entitled thereto jure marito, as being personal estate.
2d. That nothing passed by the deed of 1794, to Joseph Brock ; the conveying being founded upon a consideration of his releasing, &c.; which he is not found to have done.
3d. That B. Robinson’s having always continued in possession of the slaves until his death is a proof that nothing was intended or did pass by the deeds to Joseph Brock ; no delivery being found.
4th. That, although the slaves, named in the deeds of June, 1794, and February, 1792, should have passed thereby, yet the appellant ought to recover Jane and Jerry.
The counsel for the appellee, on the other hand, contends that the legal estate in the slaves being vested in John Brock and his heirs, by the deed of March, 1788, disabled the appellant or his testator from recovering them in an action at law.
As this may be deemed a previous question in this case, 1 shall consider it first.
It is a general proposition that trusts are a creature of equity; and, where the object of a suit is to enforce the performance of a trust by the trustee himself, or his heirs, Courts of Equity seem to have claimed an exclusive jurisdiction founded upon the confidence reposed in the trustee by the party creating the trust, and the fraud, default, or misconduct of the trustee himself. But, where the injury complained of does not proceed from the fraud or default of the trustee, and is of such a nature as that a Court of Law can administer the remedy, I have supposed it no objection to the jurisdiction of the latter, that the title of the plaintiff is an equitable, instead of a legal one. Thus, if a tenant for life were to do such an act as would amount to a forfeiture of his estate in lands held by another as trustee in fee-simple to his use, with remainder to the use of a third person and his heirs, I should imagine the remainderman might maintain arr ejectment, on a '“demise laid in his own name instead of that of the trustee, or his heirs : for, if be could not, it might often happen, (in this country at least,) that, for want of knowing the names of the persons in whom the legal title was vested, the cestui que use in remainder could never obtain possession of the lands, notwithstanding any act of forfeiture by, or even, the death of, the tenant for life. In like manner, I should suppose the cestui que use of a slave might bring an action of trespass or trover against any person who should take the slaves out of his possession ; — and I can see no reason why he might not, in the same case, maintain an action of detinue in his own name. I am therefore not prepared to say (as a general proposition) that the cestui que use of a slave cannot maintain an action of detinue in his own name ; but must sue in the name of his trustee, or his heirs, to whose names and persons, under the operation of our present law of descents, he might be perfectly a stranger in the course of a very few years. I shall, therefore, proceed to consider this cause on its merits.
The plaintiff below founds his right of supporting this action upon the administration, with the will of Benjamin Robinson annexed, granted to him by a Court of competent jurisdiction. I shall make two remarks upon this will: — First, that as it bears date prior to the deed of 1788, that deed operates as a revocation of the will, as to the lands and slaves therein comprised. — Secondly, that as it contains a legacy to his sister-, it creates a presumption (not removed by any thing contained in the special verdict) that he left a sister, as well as a brother, (the plaintiff,) to inherit his estate ; to whom, as his heirs, the fee-simple in the lands and slaves mentioned in the deed, and which, in the events which have happened, were to go, (unless otherwise disposed of by him,) by the express provisions in the deed. And since the object of the suit is not only to recover the slaves limited to the wife and her heirs, but those also which were limited to the husband and his heirs, I should conceive that the sister also ought to have been a party to the suit for the recovery. For I conceive the trust estate not to have been spent at the death of Benjamin Robinson, the husband, for reasons which will appear hereafter ; but that the same was continued after his death, with the new uses annexed thereto ; the performance of which in favour of the several cestuis que use, it belonged to a Court *of Equity to enforce, in behalf of the respective heirs of the husband and wife.
By the act of 1727, c. 4, sect. 12, it is enacted, that any slaves settled, conveyed or devised, with the same limitations, and in the same deed or will, with land, shall be considered as annexed to, and shall descend and pass with it, from time to time, in possession, reversion and remainder; with a proviso that such slaves should be liable for any debts of the tenant in tail for the time being. If Benjamin Robinson made no disposition of them, under the power given him by the settlement in 1788, they consequently descended with the land to his heirs, who were entitled to claim them, as such, under the deed, without the assent of the executor or administrator, and without his aid in recovering them. For, not being liable, as I incline to think, for Benjamin Robinson’s debts, (he being only tenant for life of the use of them,) in case there had been any children of the marriage, to whom they must have gone, without incumbrance, under the limitations in the deed of 1788, and there being no revocation of the trust upon the death of Mrs. Robinson without issue ; but on the contrary, the trust being declared to be perpetual, for the use of the heirs of both the husband and wife ; I am *108 strongly inclined to think that the executor or administrator of Benjamin Robinson could have no right to sue for the slaves limited by the deed of 1788 to his heirs.— This would, of itself, be sufficient to decide the fate of the present suit, which is brought for the recovery of other slaves, as well as those limited to the heirs of the wife ; since it no where appears that Charles Carter Robinson (the plaintiff) is sole heir, as well as devisee and administrator, with the will annexed, in which character he now sues. The will (being antecedent to ’the deed of settlement in 1788) cannot operate as an appointment under the deed ; or, if it could, then the bequest of Jerry and Pallas to the sister would defeat the claim of the brother to them, under that appointment. For in that case the sister would derive her title from the deed, and not from the will: and therefore the executor could have no right to sue for what she would claim independent of his assent, and, with the aid of a Court of Equity, enforce without his concurrence.
X might here conclude .my opinion upon the present verdict. But as it is possible that the plaintiff, C. C. Robinson, may unite in himself the character of sole heir of his brother, as well as that of administrator, and as I conceive *enough appears upon the face of this special verdict to enable me to decide the whole matter in controversy, I shall proceed somewhat further.
By the settlement in 1788, the whole property therein comprised was conveyed to a trustee in fee, to the use of the husband and wife for their joint lives, with remainder to the survivor for life, and thereafter to the children of the marriage: and, if there should be no child, the remainder of the lands, and certain slaves were to go to the heirs of the husband, (unless disposed of by him,) and, of the residue of the slaves, the remainder was declared to vest in the heirs of the wife, if not otherwise disposed of by her.
Here it may be proper to observe, that, on the death of the survivor, a new use, different from the first, was created ; by which new use, the joint property was thereafter to be divided, and to descend separately ; the lands and one part of the slaves to go in one channel, the remainder of the slaves in a different channel. This new use could not take effect until the death of the survivor, without any children of the marriage, without making any appointment. By severing the wife’s slaves, with two others, from the lands, which, with the other slaves, were to descend to the heirs of the husband, it was manifestly the intent of the parties that they should go to different persons.
Neither husband nor wife had any more than an estate for life, with power to appoint, as to the respective parts of the property, intended to go to their heirs respectively. I say respectively, because it is impossible to read the deed, without understanding it in that manner. The husband never was possessed of any of the slaves in right of his wife, after the settlement, by which he divested himself of the property which he acquired therein as a part of her fortune; his possession thereafter was under the deed of settlement, consequently his marital rights were from that period totally suspended, as long as he lived. If the rule that deeds shall be construed according to the intention of the makers, so far as they may be consistent with the rules of law, be a sound rule of interpretation; and if it be true that every man may waive the benefit of any law in his favour, I would ask, whether we can hesitate to pronounce that the intention of the parties (the husband as well as the wife) was, that the slaves limited to her heirs, after the death of the survivor, should not go to his; and whether, if such was their mutual intention, we *ought to defeat it by a forced construction of the meaning of the word heirs : — A word whose technical sense cannot, I conceive, be ascribed to marital rights ; the husband, in no sense that I have ever understood it, being heir to the wife, except in a single case provided for in our law of descents, to which the present bears no resemblance. The question here is not who is the wife’s heir ; but whether the husband is. His marital rights extend to every personal thing of which she was possessed, or he possesses himself, during the cover-ture ; and, in the event of surviving her, his right to administer upon her personal property not reduced to possession, supersedes all others ; and the law protects him from distributing it when recovered.
' But this right, X conceive, he has given up, in the present case, by the settlement; and the wife, as to the slaves reserved to her heirs, was to be regarded as a feme sole. But, as her heir, he can claim nothing, unless, indeed, she shall not have left a single relation in the world ; and that, only under the express provision of our law of descents. The description of next of kin of the wife can, in no respect, apply to the husband : he is entitled to the personal property of his wife jure mariti, 3 Ves. jun. 246, 247. The case is perfectly parallel, where the person to succeed to the personal estate of the wife is described as her heir. He cannot be entitled under that description. But it was urged at the bar, that the husband, being found to have died possessed of the slaves, his executor had no occasion to administer upon the wife’s estates, in order to maintain a suit for the recovery of her property in action ; because, where the husband is in possession of the property of the wife, he is not obliged to administer upon her estate.
Neither the fact, nor the conclusion drawn from it, appears to me to apply to the principle of law there relied on. I have said the husband (after the deed of settlement was made) never was possessed of the sláVes, as husband, but as cestui que use under the deed: and, as a trust estate and a legal estate cannot be united, (as was decided in the case of Roy v. Garnett, 2 Wash. 9,) his rights under the deed of settlement interposed between his marital rights and the possession acquired under the deed of settlement, so as to prohibit their union altogether; and, since his possession was never as husband, no right, as husband, could, I apprehend, be transmitted to his executor or administrator, in virtue of that possession. His representatives, therefore, must resort to the same course which the *husband himself must have pur *109 sued to recover the slaves or other property of his deceased wife, which he had never reduced to his legal possession ; — by taking out letters of administration on her estate.
We now come to that point of the cause upon which the appellant’s counsel seemed to rely with great confidence : the operation of the deeds of 1792 and 1794 to Joseph Brock from Benjamin Robinson.
The consideration, mentioned in the former to Joseph Brock, being for money before paid and advanced, there is no doubt that at law it was good and valid ; and since this is not a question between the creditors of Benjamin Robinson and his vendee, the remaining in possession (especially as the deed was made a record in due time) is of no importance whatsoever. Whether intended as a mortgage or not, is a question for a Court of Equity. And if the plaintiff had brought his suit in equity, as under all the circumstances of this case I think he ought, no doubt that the Court would have made such a decree, as a due consideration of that question would have required.
The consideration for the second deed, seems, in part, to be founded on the primitive intention of the parties to the deed of settlement in 1788 ; and for the purpose of explaining the same; together with some beneficial concessions from Joseph Brock to Benjamin Robinson ; as well as five shillings paid in hand ; a. circumstance which I conceive sufficient to establish a legal consideration, executed on the part of Joseph Brock ; and there carmot, X presume, be a doubt that a Court of Equity would enforce the performance of the covenant, on his part, to execute the release as to Alice and her three children ; which is the only executory part of the deed.
But there is another point of view in which both these deeds may be considered, which leaves no room for doubt in my mind. By the deed of settlement of 1788, a power of appointment is reserved to Benjamin Robinson, as to the lands and slaves which, in the events which have happened, were to descend to his heirs. These deeds as to those slaves, are a good and effectual appointment under that power. And, with respect to those which were to descend to the heirs of his wife, if, under that provision, he had any claim or title to them, I conceive it to have been completely released and transferred by the deed executed to the defendant in 1794. Upon every ground, therefore, I am of opinion that the judgment should be affirmed.
*1 have omitted saying any thing on 1 the point of severing the damages, conceiving it to be perfectly out of the question. If the fact be that Charles C. Robinson, unites in himself the character of sole heir to Benjamin Robinson as well as his administrator ; might it not be proper to award a venire de novo, in order that the title to Jane and Jerry, noticed by Mr. Williams in his argument, may be more satisfactorily explained, than in the present verdict ? To which it may be answered: The judgment in this suit cannot operate as a bar to the plaintiff’s recovery of those slaves (if entitled to them) under the limitations in the deed of settlement. I therefore conceive no venire de novo should be awarded — but the judgment be affirmed in toto.
JUDGE ROANE.
The slaves mentioned in the declaration, fall under the several following classes : viz. — Mordicai, Eawson, Gabriel, and Nan, are the survivors of those limited to the wife of B. Robinson and her heirs by the deed of March, 1788: — Reuben and Lisee were conveyed to Joseph Brock by the deed of 1792 : — Ben and Milly were conveyed to him (together with Mordicai, Nan, Gabriel, and Lawson) by the deed of June, 1794 ; and Jane and Jerry (who complete the number sued for) are alleged to be sufficiently found by the appellee, by that part of the verdict, which states “that the slaves in the declaration mentioned, are the slaves named in the indenture of the 24th of March, 1788, or the increase of the females therein also named.”
It is not found, however, (although extremely important in this case,) whether Jane and Jerry were descended from the female slaves limited to the wife, or those limited to the husband by the deed of 1788 ; nor is it found that Jerry was so descended ; on the contrary it appears that a slave named Jerry is limited by the deed of 1788 to the husband and his heirs, and it does not appear that any slave of this name has been duly conveyed to the appellee.
I have been thus particular in the classification of the slaves, because it is evident that they severally fall within distinct points of consideration.
As to the first class above stated, they bring us to the construction of the deed of 1788; and it is necessary to decide, whether, in the events which have happened, the appellee (the father and heir of the wife) or the intestate of the appellant (her husband who survived her) is -entitled *to the slaves comprehended in this class. I am of opinion that, upon the true construction of that deed, a limitation to the husband longer than for his life was not contemplated ; although in general, a husband surviving his wife and becoming her administrator is not bound to distribute her personal goods. In the event of her surviving him, in the case before us, the father would clearly succeed as her heir : and in the contrary event, the husband was entitled to hold her share as survivor, during his life, by the very terms of the deed ; a provision which would have been wholly unnecessary, if the present pretensions of the appellant are correct. His right to her slaves, stipulated by the deed, in the event of his surviving her, forestalled and waived, as to the slaves in question, his general right as a husband to hold the personal goods of his wife dying in his life-time, without account; and, taken in connexion with other circumstances apparent on the deed — (such as her right to dispose of, and appoint her slaves to whomsoever she pleased) — shews evidently the intention to be, that, quoad the slaves in question, she was to be considered asa feme sole: and imports a renunciation of the marital rights of her husband touching the same. In the event of a total failure of children, the negroes were to go respectively into the several families of the husband and wife : — it is a strong circumstance shewing this, that four, out of six, of the slaves limited to the wife, were received with *110 her as her portion ; and the other two might have been added, in consideration of other articles of property also received with the wife. As to the first class of slaves above ■mentioned, therefore, the title is with the appellee, under the deed of 1788.
With respect to the slaves Reuben, and Ivisee, and Ben, and Milly, they passed under the deeds of 1792 and 1794. In both those deeds a money consideration is expressed to have been received in part; and, therefore, as the appellee is also found to have been in possession thereof, his title at law seems complete. With respect to the negro Jane the verdict is too uncertain for us to act upon it. If she were descended from a female slave limited to the wife by the deed of 1788, she is the property of the appellee, but if from one limited to the husband, she is the property of the appellant. As to Jerry, we must either take it that he is the same slave who is limited to the husband by the deed of 1788, (which, though perhaps the better opinion, we ought not to presume on a special ver-diet,) *or, if descended from one of the female slaves, he stands in the same doubtful predicament, as to his descent, as I have already stated to exist in the case of Jane. A venire facias de novo ought to go as to those slaves, and then the difficulty may be corrected as to the apportionment of the 1001. damages: I should (as at present advised) feel a difficulty in making this severance, if a venire de novo were not awarded.
With respect to the objection to the action at law, in this case, in consequence of the legal estate being alleged to be in the trustees, under the deed of 1788, 1 think the position of the appellant’s counsel, “that on the death of the husband and wife without children the trust was executed,” is correct. But if it were not, still, upon the principles and reasoning in some of the English cases, I think the objection ought not to prevail in this case. — Eor example, in the case of Goodtitle, on the demise of Hart v. Knot, (Cowp. 43,) it is said, (page 46,) “that it has often been determined that an estate in trust, merely for the benefit of the cestui que trust, shall not be set up against him ; any thing shall be rather presumed : nor shall a man defend himself, by any estate, which makes part of the title of the lessor of the plaintiff.” It is said, however, that, being now on a special verdict, we can presume nothing. Agreed : but, as it is not negatively stated, that there was in this case no surrender, and as such a one may actually have existed ; the objection, in this case, (if there was any thing in it,) would perhaps justify the Court, rather than overrule the action on this ground, to award a venire de novo for the purpose of having the case made more complete.
With respect (more particularly) to the interest limited to the husband, (and the same in relation to that of the wife,) by the deed of 1788 — I consider it as a limitation to him for life of the land and slaves in his own share: — remainder to his heirs ; and that the interposing of eventual and particular estates, between these limitations, does not preyent their union in the husband, so as to give him an absolute title; subject, however, to the chance of survivorship on the part of his wife, and to the contingency of their having children. I understand it to be a rule, that whatever words would give, in the disposition of real estate, an express estate tail, and, a fortiori, a fee-simple, will, in the disposition of personal goods, carry the whole interest: (2 Eonb. 81, and the cases there cited ;) and I see no necessity for construing the limitation *in question otherwise than if the estates limited to the husband and wife, respectively, had been by separate and distinct deeds or clauses. The giving the husband, in casé of bis surviving his wife, an additional right for his life in her slaves (and vice versa) cannot vary the true construction of the interests limited to him, as to his own slaves, although (possibly, for brevity and convenience) the two limitations may seem consolidated in one clause. As to the idea of the slaves being annexed to, and descending with the land, under the act of 1727, however that act might apply in this case, (as to which I give no opinion,) yet clearly, this condition can only exist during the existence of the particular estate for life or lives. — It can never exist after the interest has become entirely absolute, and all the intercepting estates are, either extinct, or have never taken place.
Under every view of this case, however, I am of opinion that a venire facias de novo ought to be awarded, for the purposes above mentioned.
JUDGE EEEMING.
The counsel for the appellant, in this cause, has stated five different grounds, on which the judgment of the District Court ought-to be reversed.
1st. That, by the deed of 1788, Mrs. Robinson having died in the life-time of her husband, he became entitled to all the slaves in that deed named, to one moiety under the deed, and the other as heir to his wife.
2d. That nothing passed to the defendant by the deed of 1794 ; the conveyance being in consideration of his conveying Alice and her three children, which it doth not appear he hath done.
3d. That nothing passed by the deed of 1792, as Robinson continued in possession of the slaves till his death, in 179S.
4th. Because he had no power to dispose of the slaves under such appointment as was contemplated by the indenture of 1788, which neither of the papers are : and,
Sth. If all the other points are against the appellant, he ought to have judgment for Jane and Jerry. >
With respect to the first point, let us consider the nature of the deed, and the true objects and intentions of the parties to it.
Although it was executed after the marriage between Benjamin Robinson (the intestate of the appellant) and Susanna Brock took effect, yet it was, as stated in the deed itself, the consummation of a contract that existed *previous to the marriage, in consequence of its having been then in contemplation; and was to operate as a marriage settlement, or jointure to the wife, and to be a complete bar to any claim of dower in her husband’s estate, in case she should survive him.
The first object of the deed, which was in the nature of a trust to John Brock, was a provision for Robinson and wife, during their *111 joint lives, and for the survivor of them during- life — and then a provision for such children or child as might be the fruit of their marriage — but if no such children or child, {which was truly the case,) then the lands and slaves which originally belonged to the said Benjamin, except two slaves, Mordicai and Alice, to be held in trust for the heirs of the said Benjamin, or to be disposed of as he should appoint and direct; and that lían, Priscilla. Gabriel, and Lawson, (the four he received as part of his wife’s portion,) and also Mor-dicai and Alice, (two of his own stock,) with their future increase, to be held in trust forever, for the use of the heirs of the said Susanna, or to be disposed of as she'should appoint and direct. What then was the true intention and understanding of the parties to this deed, at the time it was made, in case there should be no issue of the marriage ?— The answer, to my mind, seems obvious and plain, that the lands and certain slaves enumerated in the deed, should (on the death of the survivor) go to the family of the said Benjamin Robinson ; and that the other six (particularly named) and their future increase, should go into the family of the said Susanna, to wit, the family of Brock. And such appears to have been the understanding arid opinion of Benjamin Robinson himself, {the principal party to the deed,) who, after the death of his wife, recites, in his deed of 1794, “that the said six slaves (particularly naming them) will, on his death, descend to her father, Joseph Brock, or his “heirs and the safest rule of interpreting deeds and contracts, is to construe them according to the intention and understanding of the parties, at the time of making them.
It could never have been in contemplation of the parties, that in case of the death of said Susanna without a child, and without having made a disposition of the six slaves, her surviving husband should take them, as her heir. Robinson himself entertained no such idea. If there are any cases in the English books that seem to contravene this construction of the deed, they are founded *on general principles, and where no express provision is made for the contingency which has happened in this case.
2d. With respect to the second point, “that nothing passed to the defendant by the deed of 1794 ; the conveyance being in consideration of his conveying Alice and her three children, which it doth not appear he hath done.”
To this it may be answered, it is presumable that Alice, with her children, was given up, because, though it is not so found in the verdict, she is not named in the declaration ; but there is a consideration in money mentioned in the deed to have been received, sufficient to give it validity ; and, by Robinson’s own acknowledgment, he had only a life estate in the negroes, which terminated by his death, in the year 1795.
3d. The third point is, “that nothing-passed by the deed of February, 1792, as Robinson continued in possession of the slaves therein named, till his death, in 1795.”
This appears, on the face of it, an absolute deed, for a valuable consideration, and was duly recorded ; but as the slaves remained in Robinson’s possession, it might, perhaps, have been intended by the parties to have operation only as a mortgage, and, admitting that to be the case, it was incumbent on Robinson or his representative to exhibit a bill in a Court of Equity, to redeem the mortgaged slaves ; and to shew that he had refunded the money, with interest, advanced for him by Brock, and that he had also indemnified him for the suretyship and engagements entered into on his account, as stated in the said deed, as one of the considerations on which it was made. 4th. The fourth point is, “that Robinson had no power to dispose of the slaves under such appointment as was contemplated by the indenture of 1788, which neither of the papers are.”
This objection might, perhaps, have had some weight, with respect to the deed of 1792, which was, probably, made in the life-time of Mrs. Robinson, (though it doth not so appear,) had there been children, or a child, of the marriage; as Hannah was one of the negroes mentioned in that deed, and was also included in the deed of 1788; but, as circumstances now appear, it can have no weight.
5th. The fifth objection is, “that if all the other points are against the appellant, he ought to have had judgment for Jane and Jerry.”
*With respect to Jerry, he being named in the deed of 1788, and not being in the class allotted to Susanna, and to her heirs, in case of her dying without issue, and without disposing of them, it seems to me that the right to him is in the appellant, for the recovery of whom he might well maintain an action, as administrator of Benjamin Robinson ; but, with respect to Jane, she is not, I believe, mentioned in the record, except in the declaration and verdict, wh-ch seems imperfect and unsatisfactory in this, that it finds “ that the slaves in the declaration mentioned, are the slaves named in the indenture of 1788, or the increase of the females therein also named ; “but doth not distinguish whether the said increase, or any, and what part of it, be of the class allotted to the said Susanna, or of that retained in the family of the said Benjamin Robinson ; and how the appellant’s title to Jane accrues, I am at a loss to discover. I am, therefore, of opinion, that a venire de novo ought to be awarded.
JUDGE EYONS.
I have not formed any certain opinion, but as three Judges have concurred, my declaring one positively is of no consequence in determining the cause. I conceive it, therefore, unnecessary to delay the decision by the Court ; but, as I, had. some doubts respecting it, I will mention them ; supposing, however that in some of them I must be in an error; since three Judges differ from me, and give a decided opinion.
The law, I conceived, was well settled, that, where an estate was given to A. for life, with a remainder to his heirs general; or with a power to give or appoint to others at pleasure, and no limitation over, (for want of appointment,) to any but heirs gen eral, an absolute estate in fee vested in A. *112 especially in a chattel; and that it made no difference whether a use only was so given, or a.legal estate ; — for a trust is a creature of equity, and governed by the same rules in equity, as a legal estate is at law ; it being the maxim in such cases, that equitas se-quitur legem. 2 Chan. Cases, 64; 2 Ventr. 350; 1 Fonb. 146, 7, 8; 1 Chan. Cases, 265; 1 Fonb. 302, 3, 4.
Again ; it is a rule of law that a term (which is a chattel real) given to one and his heirs shall, nevertheless, go to his executors ; (1 Vern. 163,) and another rule, that an estate for life is merged in a remainder in fee, as soon as both are united in the same person.
In this case, slaves were conveyed to John Brock, in trust for the use of Robinson and wife, for their joint *lives, and the life of the survivor ; as a jointure to her in lieu of dower, &c. and, after their deaths, in trust for the children of the marriage, &c. but, if there should be no such child, then, certain slaves for the use of the heirs of the husband, or for the use of such person as he should direct and appoint, and other slaves for the use of the heirs of the wife, (not saying her next a-kin,) or to be disposed of as she should appoint, &c. The wife died in the lifetime of the husband without any child, and without having made any appointment or disposition of the slaves ; —and the question is, who is entitled to them?—
The husband is the legal heir, or representative of the wife as to her personal estate, which vests in him,' immediately on her death, as her administrator, without account or distribution. — If in possession, he need not administer; but, if not,in possession, he has a right to administer ; and the right is said in 1 Wils. 169, to be transmissible to his executors ; but the correctness of the last position appears to me to be doubtful.
Money ordered to be settled on the wife belongs to the husband, 1 Fonb. 103, 313. — But the trust in this case continued for the life of the husband, and to his heirs forever ; so that he had no legal estate in what was limited to his heirs and appointees, after the death of his wife or during his own life, &c. That trust was surely useless; inserted merely cúrrente calamo ; and should be rejected . as idle, and answering no purpose after the death of the wife. See Parkhurst v. Smith, Willes, 327.
But it is said, “the husband by the deed gave up all his marital rights, and she held as a feme sole ; as in the case of Shermer and Shermer, 1 Wash. 266.”
In that case the wife (who survived) held an estate for life under her husband’s will; with a remainder to whomever she should think proper to make her heirs; which gave her a fee or absolute property, in the same, manner as if devised to her and her.heirs; and, of course, her own relations took the estate : but, is that in any thing like the present case, where the husband survived ? — Suppose the estate had been given or devised to her by a third person, or even her father, in the same words, and the husband had survived ; would he not have taken the personal estate as her administrator ? — If a husband agrees that his wife may dispose of her personal chattels by deed or will, and she does neither ; does it bar or deprive him of his legal right to them as survivor and administrator, when there is no special limitation over, (in default of her appointment,) other than to heirs general, not saying of *her own kindred ? I do not recollect to have heard it disputed before that the answer to this question should be in the negative. See 1 Fonb. 443.
I conceive that, after the death of the wife in the life-time of the husband, without child or appointment, the trust was at an end, as-useless ; and, surely, all his own part of the slaves, or the slaves settled on himself, were then liable to his debts, as his own absolute property; the trust being at an end as to his part, even if it continued on his wife’s part to preserve it for her heirs at his death. Can a man convey slaves to trustees for the use of himself for life, with a remainder ta his own heirs or appointees forever, to protect them from his creditors, and to defeat ■ those creditors of their just claims? — On the death of the wife without child, the estate for life (in his own share of the slaves, at least) was merged in the remainder to his-own heirs, and he had a fee or entire property in them: the future trust.therefore, as to him was useless and void ; the creditors would, in law and equity, stand in the place of appointees ; and so would his executors. Willes, 327; 2 Chan. Cases, 63, 78.
The deed of 1794, being made on condition that Brock released his right to Alice, (which he never did,) I consider as void : but that of 1792, for the slaves Reuben, Bisee, Hannah and Johnson, may be sufficient to convey them, as a good consideration is expressed in it; and, although Robinson retained possession until his death in 1796, the act of limitations did not operate on the possession ;. unless his administrator retained them after-wards ; and that is not found in the verdict. —As, according to my present conception, (which I do not mean as conclusive,) the heirs of Robinson took nothing under the deed of trust of 1788, his brother and sister could only take as legatees under the will, and not as heirs or appointees under that deed.
As Robinson was in possession of all the slaves at his death, his ádministrator had a right to possess himself of them ; and, if taken from him, might maintain detinue to recover them; but when taken, or whether taken before or after administration does not appear, and remains uncertain.
The slaves Jane and Jerry, (or one of them,) not being named in any of the deeds, did not pass to Brock ; and though said to be descendants of female slaves named in the deeds, are not found to be descendants since the date of those deeds. They might therefore have been *born before ;— and nothing can be presumed in a special verdict: so that, if I am wrong in other respects, (which is probable, since all the other Judges differ from me,) I concur in opinion with the rest of the Court, that, as a judgment is an entire thing, and the joint damages, as found, cannot be severed by this Court, there must be a venire de novo.

 1 Bac. Abr. 480, G-wil. ed.

 2 Call, 491.

 1 wash. 30.

 2 Call. 447.

 See 7 Bac. Abr. 180, Gwil. edit.

 Dyer, 29 b. pi. 201; 1 Salk. 113; Calonelv. Briggs, 7 Term Rep. 125.

 See 7 Term Rep. 440 — 445; 3 Hast. 93; 6 East. 614; 7 Term Rep. 725.